**DELAWARE COUNTY, individually and on behalf of all others similarly situated**

v.

**MELLON FINANCIAL CORPORATION, J.P. Morgan Chase & Company, PNC Financial Services Group, Inc., and John Doe Banks Nos. 1 through 300**

**Appeal of: Mellon Financial Corporation.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2006.
Decided Jan. 3, 2007.

Dennis C. McAndrews, Wayne, for appellant.

John F. Smith, III, Philadelphia, for appellant.

Marc L. Ackerman, Bala Cynwyd, for appellee, Delaware County.

Ronald G. Henry, Bryn Mawr, for appellee, Delaware County.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and LEADBETTER, Judge.

OPINION BY Judge PELLEGRINI.

Mellon Financial Corporation (Mellon) appeals from an order of the Court of Common Pleas of Delaware County (trial court) granting Delaware County's request for class certification as to claims filed by Delaware County against Mellon while it acted as a sinking fund depository.

On November 18, 2001, Delaware County, individually and on behalf of all others similarly situated, filed an amended class action complaint with the trial court against Mellon, contending that Delaware County issued bonds for public purposes that were never presented for redemption by the bondholders and were left in Mellon as the sinking fund.[1] More specifically, Delaware County alleged that pursuant to Section 8224 of the Pennsylvania Local Government Unit Debt Act (Debt Act), 53 Pa.C.S. § 8224,[2] Mellon was required in its capacity as a sinking fund depository

---

1. A "sinking fund" is "a fund set up and accumulated by usu. regular deposits for paying off the principal of a debt when it falls due." Webster's Ninth New Collegiate Dictionary 1101 (1989). Also named as defendants were John Doe Banks Nos. 1–300 as were J.P. Morgan Chase & Company (Chase) and PNC Financial Services Group, Inc. (PNC) because Chase had acquired the corporate trust business of both Mellon and PNC. (See Delaware County's amended complaint at 5, Reproduced Record at 14a.)

2. 53 Pa.C.S. § 8224(f) provides:

**Return of unclaimed moneys.** The sinking fund depository shall return to the local government unit all moneys deposited in a sinking fund for the payment of bonds, notes or coupons which have not been claimed by the holders thereof after two years from the date when payment is due, except where the funds are held for the payment of outstanding checks, drafts or other instruments of the sinking fund depository. This subsection or any action taken under this subsection does not relieve the local government unit of its liability to the holders of unrepresented bonds, notes or coupons.

to return unclaimed monies to Delaware County after two years **from the date when payment was due,** and it had failed to do so.[3] Delaware County sought an accounting of the monies and a return of the unclaimed funds. It also alleged in its complaint that it met the requirements for class certification because the members of the "Class"[4] and each "SubClass" numbered in the hundreds and were geographically dispersed throughout the Commonwealth making joinder of all members impracticable.

Mellon filed an answer denying the allegations and raising in new matter many arguments, but only pertinent to this appeal was that the action should not be

certified as a class action because Delaware County failed to meet the requirements of Pa. R.C.P. No. 1702 (Prerequisites to a Class Action). Specifically, Mellon raised the defense that Delaware County's claims against Mellon were not common or typical of the claims of the other class members because the contractual provisions it had with Delaware County on the 1992 bond issue regarding unclaimed bond funds were different from those that other class members had with the other defendants.[5] Additionally, the contract it had with Delaware County on the 1995 bond issue indicated it was only an escrow agent and not a sinking fund depository.[6] Mellon also filed a counter-

3. The complaint also alleged that they had violated Section 9 of the First Class City Revenue Bonds Act, Act of October 18, 1972, P.L. 955, 53 P.S. § 15909, which also required sinking fund depositories to return unclaimed funds to first class cities after the same two-year time frame; Section 9 of the Philadelphia Municipal Liability Financing Act, Act of December 7, 1982, P.L. 827, 53 P.S. § 16999.9 (sinking fund provisions); and the Municipalities Authorities Act, which was repealed by the Act of June 19, 2001, P.L. 287, 53 P.S. §§ 301–322. They further alleged the sinking fund depositories were guilty of conversion of funds of Delaware County, unjust enrichment and breach of fiduciary duty.

4. "Class" was defined in the complaint as "all governmental entities and authorities in the Commonwealth of Pennsylvania that issued debt securities for which the Banks provided paying agent or sinking fund depository or similar fiduciary services."

5. The agreement between Delaware County and Mellon was dated August 13, 1992, in which Delaware County appointed Mellon and Mellon agreed to serve as the sinking fund depository for a 1992 bond issue. Relevant to this appeal, paragraph 7(d), Payment of Bonds, provided the following regarding unclaimed moneys:

> Unclaimed moneys held in the Sinking Fund following the final maturity date of the Bonds, together with the interest earned thereon, if any, **shall be returned to the**

**County on or before the second anniversary of the final maturity date of the Bonds.** The Fiscal Agent may, prior to returning such unclaimed funds to the County, and at the request and expense of the County shall, publish notice to the effect that after a date specified in such notice, any unclaimed moneys which had been deposited for payment of the Bonds will be paid to the County. (Emphasis added.)
(Reproduced Record at 306a.)

Schedule "A," which was attached to and made part of this agreement, indicated that the maturity date for the 1992 Current Interest Bonds was November 15, 2022, and the maturity date for the 1992 Capital Appreciation Bonds was November 15, 2012.

6. This agreement was dated August 16, 1995, but was between Delaware County and Meridian Trust Company (Meridian) in which Delaware County appointed and Meridian agreed to serve as sinking fund depositary/fiscal agent for a 1995 general obligation bond issue. However, in paragraph 2(e) of the August 16, 1995 Agreement, it provided that "[o]n or before August 25, 1995, the Fiscal Agent shall transfer the moneys in the Escrow Fund to *Mellon Bank, N.A., as sinking fund depository for the Authority Loans,* to be applied to the repayment of the principal of and interest on the Authority Loans as set forth in the schedule annexed hereto as Exhibit 'A' and made a part hereof. Any moneys remaining in the Escrow Fund after such repayment shall be promptly returned to the County."

claim-indemnification arguing that Delaware County was contractually obligated to indemnify and hold Mellon harmless with respect to all liabilities which Mellon might incur.

Delaware County filed a motion for class certification with the trial court requesting that it name Delaware County as Class and SubClass representative of approximately 3,000 governmental entities. At the hearing on its class action certification, no evidence was presented by Delaware County as to which governmental entities in Pennsylvania had similar agreements on bond issues with banks that had failed to repay unpaid funds. Delaware County merely alleged that Mellon had acted as a sinking fund depository and had failed to refund monies due to it from bond issues as required under the Debt Act. Counsel for Mellon argued that it was only involved with a bond from 1992 which had not yet matured, and a bond from 1995 for which it only served as an escrow agent, not a sinking fund depository.

By order dated January 9, 2006, the trial court granted the motion naming Delaware County as Class and SubClass representative with regard to Mellon.[7] In an accompanying opinion, the trial court stated that this action involved "identical claims of hundreds of governmental claimants based on essentially identical statutory provisions.[8] It concerns claims that defendants had a common practice of failing to return unclaimed funds from municipal bonds, bond coupons and notes to the municipalities and local government units in the Commonwealth of Pennsylvania which issued these debt obligations. Further, it is claimed that defendants' failure to return such funds violated essentially identical statutory requirements" of the Pennsylvania statutes. (Trial court's May 8, 2006 opinion at 2.) Because there were common issues, no problems in the management of the action as a class action, and the risk of inconsistent adjudications with hundreds of claimants, the trial court certified the class. This Court permitted a discretionary appeal by Mellon from the interlocutory order certifying the class.[9]

 The prerequisites for granting a class action and allowing one party to sue as a representative party on behalf of all members in a class are found at Pa. R.C.P. No. 1702, which provides the following:

> One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(Emphasis added.) Similar to the 1992 agreement between Delaware County and Mellon, the 1995 Agreement also indicated that unclaimed moneys held in the sinking fund following the final maturity date of the 1995 bonds were to be returned to Delaware County **on or before the second anniversary of the final maturity date of the 1995 bonds.** The maturity date for the 1995 Bonds was November 15, 2015. The 1995 Agreement was also signed by Mellon as "Sinking Fund Depository for the Authority Loans." (Reproduced Record at 524a–525a.)

7. The trial court denied class certification as to Chase and PNC but did not provide any explanation for its denial.

8. The trial court further stated: "The certified class is all government entities and authorities in the Commonwealth of Pennsylvania that issued debt securities for which the banks (as that term is defined in plaintiff's complaint) provided paying agent or sinking fund depository or similar fiduciary services, during the period from January 1, 1967 to the present." (Trial court's May 8, 2006 opinion at 6.)

9. Our scope of the trial court's order is limited to determining whether it failed to consider the requirements for class certification or abused its discretion in applying them. *In re Class Action Appeal of Charles Mackey and Edward Behr*, 687 A.2d 1186 (Pa.Cmwlth. 1997).

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709;[10] and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.[11]

The burden is on Delaware County as the petitioner for class certification to prove the prerequisites of Pa. R.C.P. No. 1702 by "presenting facts from which the trial court can conclude that each of the prerequisites is met before a class can be certified." *Buynak v. Department of Transportation*, 833 A.2d 1159, 1163 (Pa.Cmwlth. 2003). "[M]ore than a mere conjecture or conclusory allegations are required, particularly if other facts of record tend to contradict the propriety of the class action. [Citations omitted.] The trial court has broad discretion in determining whether a class should be certified, and we will not disturb its certification on appeal unless we find the trial court failed to consider the requirements of the rules or abused its discretion in applying them." *Id.*

Mellon contends that the trial court erred in certifying Delaware County as the class representative because its claim is not "common" or "typical" of all of the other local government units' claims against the banks acting as sinking fund depositories which are being sued. Further, as the complaint is pled, the trial court did not consider the "contract defense," i.e., that the contractual provisions regarding the handling of unclaimed bond funds varied from the agreements that Delaware County had with Mellon and the agreements that varying local government units had with other banks.[12]

---

10. Pa. R.C.P. No. 1709 provides:

In determining whether the representative parties will fairly and adequately assert and protect the interests of the class, the court shall consider among other matters

(1) whether the attorney for the representative parties will adequately represent the interests of the class;

(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

11. Pa. R.C.P. No. 1708 provides, in relevant part:

In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth in subdivisions (a), (b) and (c).

(a) Where monetary recovery alone is sought, the court shall consider

(1) whether common questions of law or fact predominate over any question affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

12. Although mentioned by the trial court in its decision, Mellon has not raised any contention alleging that class certification was improper because the class was not so numerous that joinder of all members was impracticable.

■ "Commonality" requires present "questions of law or fact common to the class." Pa. R.C.P. No. 1702(2). "The common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant could be proof as to all." *Allegheny County Housing Authority v. Berry,* 338 Pa.Super. 338, 487 A.2d 995, 997 (1985). "While the existence of individual questions essential to a class member's recovery is not necessarily fatal to the class, there must be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding." *Weismer v. Beech–Nut Corporation,* 419 Pa.Super. 403, 615 A.2d 428, 431 (1992); *Cook v. Highland Water and Sewer Authority,* 108 Pa.Cmwlth. 222, 530 A.2d 499 (1987); *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa.Super. 441, 500 A.2d 1137 (1985).

■ As with "commonality," factual differences will not render a claim atypical under the "typicality" prerequisite so long as the claim arises from the same events that give rise to the claims of the class members. "[Typicality] requires that the class representative's overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that pursuit of their interests will advance those of the proposed class members." *Baldassari v. Suburban Cable TV Company, Inc.,* 808 A.2d 184, 193 (Pa.Super.2002). "Typicality entails an inquiry into whether the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will be based. While commonality tests the sufficiency of the class itself by focusing on the class claims, typicality tests the sufficiency of the named plaintiff by focusing on the relationship between the named plaintiff and the class as a whole." (Citation omit-

ted.) *Buynak.* In commenting on the typicality requirement, the United States Supreme Court in *General Telephone Company of the Northwest, Inc. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) observed: "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims. The rationale for this provision is that a plaintiff with typical claims will pursue his or her own self-interest in the litigation, and in so doing, will advance the interests of the class members, which are aligned with those of the representative."

As can be seen, commonality and typicality are similar. As the United States Supreme Court explained in *General Telephone Company of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982):

> The commonality and typicality requirements of Rule 23(a) [the federal rule regarding class actions] tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absences. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

As for whether a "unique defense" may disqualify class certification, in *Beck v. Maximus, Inc.,* 457 F.3d 291 (3d Cir.2006), the Third Circuit Court of Appeals held that to defeat class certification, the defendant had to show some degree of likelihood that a defense unique to the class repre-

sentative would play a significant role at trial. The Appeals Court stated:

> Other courts of appeals emphasize, as do we, the challenge presented by a **defense unique** to a class representative-the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the **defense** at the expense of issues that are common and controlling for the class. *See, e.g., Gary Plastic Packaging,* 903 F.2d at 180 ("[T]here is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *see also Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992); *J.H. Cohn & Co.,* 628 F.2d at 999. A class representative should "not be permitted to impose such a disadvantage on the class." *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1165 (7th Cir. 1974). (Emphasis in original.)

*Beck,* 457 F.3d at 297. Because a unique defense could become the focus of the entire litigation and divert attention from the suit as a whole, as well as disadvantage other class members, the Appeals Court emphasized that to defeat class certification, the defendant had to show a likelihood that a unique defense would play a significant role at trial. The Appeals Court set forth the following standard:

> In articulating a single standard, we align ourselves with our sister courts of appeals. A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation. We believe this standard strikes the proper balance between protecting class members from a representative who is not focused on common concerns of the class, and protecting a class representative from a defendant seeking to disqualify the rep-

resentative based on a speculative defense.

*Beck,* 457 F.3d at 301. *See also In re Milk Products Antitrust Litigation,* 195 F.3d 430 (8th Cir.1999).

Mellon contends that the contracts between the various municipalities are so different that class certification is inappropriate, and Mellon's contract defense is sufficiently unique so that "commonality" and "typicality" requirements are not met. Among other reasons, it asserts that the claim against it is not common or typical because, while the class certified seeks damages against all banks who have not returned funds to the local government two years from the date when payment is due, its contract with Delaware County allows it to keep unclaimed funds until two years after the end of the depository agreement.

Delaware County, however, argues that the focus should not be on the agreements between the various parties in determining whether the commonality and typicality prerequisites have been met for a class action to be certified, because the question is whether "the class members' legal grievances arise out of the 'same practice or course of conduct on the part of the class opponent.'" *Janicik v. Prudential Insurance Company,* 305 Pa.Super. 120, 451 A.2d 451, 457 (1982). It goes on to claim that "[a] finding of commonality does not require that all class members share identical claims, and indeed 'factual differences among the claims of the putative class members do not defeat certification.'" *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions,* 148 F.3d 283, 310 (3d Cir.1998).

While acknowledging that Mellon may have a unique defense, Delaware County contends that does not mean that the claim is atypical. Even though its contract with Mellon has this defense, because the issue

of whether all banks have an obligation to return unclaimed funds fróm when payment is due still predominates, it would have to make out that claim to succeed against Mellon. Because it is a legal question, Delaware County argues that Mellon's defense under the contract Mellon has with Delaware County would not permit Mellon to keep the funds for longer than two years and would ńot dominate the class action proceedings.

■■■ Whether a unique defense is such that it will render a class representative claim atypical is determined by whether it is likely to become a major focus of the litigation. In this case, to be successful and for the class to be certified, Delaware County only has to make out that the Debt Act mandates that all unclaimed funds have to be returned after two years and failure to do so makes the banks liable for damages. To make out a claim against Mellon, Delaware County would have to establish that it could not agree to such terms because to do so is illegal, and if it establishes that such a provision is illegal, it would then have to establish that it is not estopped from claiming damages because it voluntarily entered into such a contractual arrangement. If, during the course of the litigation, in a judgment on the pleadings or on a motion for summary judgment at trial, it was determined that Mellon's defense was valid and Delaware County's claim was dismissed on that basis, the sole plaintiff class representative would be dismissed from the case and there would be no one left to represent the class. Because of that possible result, Delaware County's claim against Mellon is not common or typical of the claims by the other class members which means Mellon's defense is unique and Delaware County cannot adequately represent the class. Consequently, the trial court abused its discretion in certifying the class.

Accordingly, the order of the trial court is reversed.

## *ORDER*

AND NOW, this *3rd* day of *January*, 2007, the order of the Court of Common Pleas of Delaware County, dated January 9, 2006, is reversed.